# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Honorable Rukhsanah L. Singh |
| v. | Mag. No. 25-14020 (RLS) |
| ROBERT GRIMES; and WILLIAM MERKL | **CRIMINAL COMPLAINT** |

I, Christopher Martinelli, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this Complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

/s/ *Christopher Martinelli*

Christopher Martinelli, Special Agent
Federal Bureau of Investigation

Attested to by telephone pursuant to
Fed. R. Crim. P. 4.1(b)(2)(A)
on April 17, 2025,
in the District of New Jersey

Honorable Rukhsanah L. Singh
United States Magistrate Judge
Name and Title of Judicial Officer

[signature: R. Singh]
Signature of Judicial Officer

**RECEIVED**

APR 17 2025

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

## ATTACHMENT A

On or about April 14, 2023, in Ocean County, in the District of New Jersey and elsewhere, the defendants,

ROBERT GRIMES and<br>
WILLIAM MERKL,

did knowingly attempt to execute a scheme and artifice to defraud a financial institution, namely Financial Institution-1, which was a financial institution as that term is defined in Title 18, United States Code, Section 20(1) or (2), and attempt to obtain money, funds, credits, assets, securities, and other property owned by, and under the custody and control of Financial Institution-1, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Sections 1344 and 1349.

**ATTACHMENT B**

I, Christopher Martinelli, am a Special Agent with the Federal Bureau of Investigation ("FBI"). I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents and other items of evidence. Where statements of others are related herein, they are related in substance and part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1. On or about April 14, 2023, defendants ROBERT GRIMES ("GRIMES") and WILLIAM MERKL ("MERKL") entered a bank, which was insured by the Federal Deposit Insurance Corporation and located in Toms River, New Jersey ("Financial Institution-1"), and asked to speak with a specific bank employee (the "Bank Employee"). The Bank Employee brought GRIMES and MERKL into an office inside Financial Institution-1 to assist them. GRIMES identified himself to the Bank Employee as an account holder ("Victim-1") and advised the Bank Employee that he wanted to initiate a wire transfer of approximately $120,000 from Victim-1's account to an account at another bank belonging to MERKL (the "Merkl Account"). GRIMES then presented the Bank Employee with a fraudulent New Jersey driver's license in Victim-1's name but bearing GRIMES's photograph, and MERKL presented the Bank Employee with MERKL's actual New Jersey driver's license and account information for the Merkl Account.

2. The Bank Employee made photocopies of the New Jersey driver's licenses presented by GRIMES and MERKL, and prepared a wire transfer agreement for the approximately $120,000 from Victim-1's account at Financial Institution-1 to the Merkl Account. GRIMES signed the wire transfer agreement using Victim-1's name. GRIMES and MERKL then exited Financial Institution-1, entered the rear passenger seats of a black Mercedes Benz vehicle (the "Mercedes") waiting in the parking lot, and departed the area in the Mercedes.

3. After GRIMES and MERKL exited Financial Institution-1, the Bank Employee stopped the wire transfer from going through and notified Financial Institution-1's fraud department about the fraudulent wire transfer request. The Bank Employee advised Financial Institution-1's fraud department that the Bank Employee did not believe that GRIMES was Victim-1 because the New Jersey driver's license that GRIMES presented to the Bank Employee did not look legitimate. Financial Institution-1 subsequently notified Victim-1 about the attempted fraudulent wire transaction, and Victim-1 reported the incident to local law enforcement.

4.      Financial Institution-1 provided local law enforcement with video surveillance footage of the incident and the photocopies of the driver's licenses that GRIMES and MERKL presented to the Bank Employee in connection with the attempted fraudulent wire transfer.

5.      Local law enforcement conducted a check of the New Jersey Motor Vehicle Commission ("NJMVC") database for both driver's license numbers appearing on the photocopies of the New Jersey driver's licenses that GRIMES and MERKL presented to the Bank Employee. The driver's license number appearing on the New Jersey driver's license that MERKL presented to the Bank Employee came back to MERKL, and the pedigree information and photograph of MERKL in the NJMVC database matched the pedigree information and photograph appearing on the photocopy of the driver's license that MERKL presented to the Bank Employee. Local law enforcement also conducted a search for MERKL in a law enforcement database, which returned another photograph of MERKL depicting a birthmark on MERKL's left cheek and information indicating that MERKL has a tattoo on his right arm. Images of MERKL captured by the video surveillance footage inside Financial Institution-1 on or about April 14, 2023 show a birthmark on MERKL's left cheek as well as a tattoo on MERKL's upper right arm.

6.      The NJMVC records check further revealed that there was no record for the driver's license number appearing on the fraudulent New Jersey driver's license in Victim-1's name that GRIMES presented to the Bank Employee. Local law enforcement also conducted a check of the NJMVC database for Victim-1. Neither the driver's license number nor the photograph of Victim-1 in the NJMVC database matched the driver's license number and photograph appearing on the fraudulent New Jersey driver's license that GRIMES presented to the Bank Employee.

7.      Local law enforcement sent screenshots of GRIMES from the video surveillance footage inside Financial Institution-1 to the New Jersey Regional Operations Intelligence Center for facial recognition analysis, which returned a possible match to GRIMES along with GRIMES's pedigree information and a photograph of GRIMES. Local law enforcement then conducted a check of the NJMVC database for GRIMES, which returned a driver's license photograph of GRIMES and an address for GRIMES in Beachwood, New Jersey. The driver's license photograph of GRIMES in the NJMVC database appears to be the same individual impersonating Victim-1 in the surveillance video footage from Financial Institution-1. In addition, a local law enforcement officer with the Beechwood, New Jersey police department, who is familiar with GRIMES, reviewed screenshots of GRIMES from the surveillance video footage from Financial Institution-1 and positively identified the individual depicted in those screenshots as GRIMES.